465 So.2d 830 (1985)
Paul Preston SPARKS, et ux., Plaintiff-Appellee,
v.
Woster ANDERSON, et al., Defendant-Appellant.
No. 16740-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
Writ Denied April 19, 1985.
*831 Bethard & Davis by Henry W. Bethard, III, Coushatta, Broadhurst, Brook, Mangham, Hardy & Reed by Wayne A. Shullaw, Lafayette, for defendant-appellant.
Gahagan & Conlay by Henry C. Gahagan, Jr., Natchitoches, for plaintiff-appellee.
Before HALL and FRED W. JONES, Jr., JJ. and PRICE, J.Pro Tem.
PRICE, Judge.
The holder of a lignite and coal royalty interest seeks damages from the former owners of the subject 242 acre tract of land on allegations that he was damaged by the refusal of the owners of the property to consummate lignite leases with Phillips Coal Company and by the actions of the owners in ultimately selling the tract to Phillips to preclude plaintiff from receiving any royalties.
The trial court found the owners to be in bad faith in their refusal to lease and the subsequent sale of the property and awarded plaintiff $14,520.00 as damages. From this judgment, defendants have appealed and plaintiff has answered the appeal asking for an increase in the award. For the reasons stated herein, we reverse the judgment.

FACTUAL BACKGROUND
Plaintiff, Paul Preston Sparks, on January 5, 1977, contracted to sell a 512 acre tract of farmland in Natchitoches Parish to Woster Anderson and his wife. The contract contained the following mineral reservation:
The Seller reserves all of the oil, gas, and other minerals, on, under, or that may be produced from the above described property, together with all the rights appurtenant to such mineral ownership.
Subsequent to the signing of the contract to sell but prior to the stipulated time for conveying title, both parties apparently became aware that Phillips Coal Company was interested in leasing a portion of the tract in connection with the development of *832 a lignite mining project in this immediate area.
A leasing agent of Phillips examined the contract and told the Andersons that the Sparks' reservation of minerals did not include lignite and on this basis, the Andersons signed a lignite lease on March 31, 1977, which covered 242 acres of the tract. The lease was attached to a 30 day draft pending title approval.
Because of the uncertainty as to whether the mineral reservation included lignite, Sparks refused to convey title to the Andersons under the contract to sell and filed suit to cancel the contract.
This suit was compromised and a deed transferring title to the entire 512 acres to the Andersons was executed on July 19, 1977. The deed contained the following provisions in regard to oil, gas, lignite, and coal:
B. There is also reserved and/or conveyed herein a reservation of all the oil and gas and other liquid or gaseous hydrocarbon minerals, conveying all others.
C. There is also reserved sixty (60%) per cent of such royalty that may be received in any other future lease affecting coal or lignite.
Sparks contends that at the time the compromise was entered into and the deed was executed, he was unaware that the Andersons had executed the March 31, 1977 lease to Phillips as it had not been recorded at that time.
Prior to the execution of the deed from Sparks to the Andersons, but after the filing of suit by Sparks, Phillips was notified by the Andersons of the dispute with Sparks, and apparently an agreement was reached between the leasing agent of Phillips and the Andersons that the March 31, 1977 lease would be void.
Apparently by inadvertance, on August 25, 1977, Phillips recorded the March 31, 1977 lease signed by Anderson upon receipt of a letter from the Andersons' attorney returning the 30 day draft.
The Andersons filed suit against Phillips to cancel the lease and joined Sparks as a party to the suit. No response was made by Sparks, and by compromise agreement the lease was cancelled of record and the suit against Phillips dismissed.
Phillips continued to negotiate with the Andersons for a lease on the subject tract and made several offers which increased the provision for payment of advance royalty by 200 per cent more than was originally stipulated in the March 31, 1977 lease. It is disputed as to whether Sparks was made aware of these negotiations through his attorney by the agents of Phillips. The Andersons rejected these additional proposals made by Phillips for a lignite lease.
Thereafter, on April 13, 1981, the Andersons granted Phillips an option to purchase the 242 acre tract and the property was conveyed to Phillips by warranty deed on July 7, 1981. The sale price for the 242 acres was $326,700.00. The Andersons were also granted an agricultural lease on the tract for 10 years, with the first five year period being rent free. The deed provided that should Phillips decide to sell the tract in the future, then the Andersons would be granted the right of first refusal to repurchase at the price offered by any bona fide third party.

PROCEDURAL DEVELOPMENT
On December 11, 1980, Sparks filed the instant action against the Andersons alleging that the defendants were arbitrary and capricious in their refusal to lease which caused plaintiff to lose at least the amount of the advance royalties which would have been paid over the life of the March 31, 1977 lease. He further alleged that defendants disregarded the interests of the royalty owner and had breached the duty owed by them as owners of the mineral executive interest in failing to negotiate in good faith for a lease and in refusing to execute a lease with substantially better terms than the original lease. By supplemental petition, plaintiff named Phillips Coal Company as an additional defendant alleging that Phillips and the Andersons entered into the agreement for Phillips to *833 purchase the property so as to deprive plaintiff of any opportunity to receive royalties.
Plaintiff filed a second supplemental petition alleging that Phillips Coal Company had an established two-tiered pricing policy for the purchase of property in this area. He alleged that Phillips would have paid $1,350.00 per acre for surface rights and $2,280.00 per acre for surface and mineral rights. Plaintiff alleged that Woster Anderson had informed Phillips Coal Company he would try to acquire plaintiff's royalty interest so as to offer the property for sale at the higher price. Plaintiff further alleged that he was not informed of the negotiations between the defendants. As a result of these actions, plaintiff alleged that he was deprived of mineral royalty bonus payments.
Prior to trial, Phillips Coal Company was dismissed from the suit with prejudice upon joint motion of plaintiff and Phillips Coal Company.
The Andersons filed a third party demand naming Phillips Coal Company as a defendant and prayed for judgment against Phillips Coal Company in the event that they were held liable to plaintiff as a result of the execution of the March, 1977 lease and/or the subsequent filing of that lease for record by Phillips Coal Company.
Phillips Coal Company filed a reconventional demand naming the Andersons as defendants praying that if plaintiff was granted recovery and the Andersons were granted contribution or indemnity from Phillips, then Phillips was entitled to a declaratory judgment declaring the March, 1977 lease valid and binding. Further, if the above recovery was granted, Phillips was entitled to a judgment rescinding the sale and lease of the property with a return of the purchase price.
Numerous exceptions were filed by the Andersons and Phillips Coal Company, all of which were overruled by the court. The trial court found that the Andersons and Phillips did not act in good faith towards Sparks as required under the Mineral Code and that their actions were undertaken to avoid the payment of any royalties that would be due to plaintiff had the property been leased. The court found that a fair royalty payment on these marginal lands would be $100.00 per acre of which plaintiff was entitled to sixty (60%) percent, which amounted to $14,520.00. Judgment was rendered solely against the Andersons as Phillips Coal Company had been dismissed by joint motion. The court also denied the Andersons' third party demand against Phillips on the finding that they were acting together in bad faith.

RESOLUTION OF ISSUES
The trial court apparently found that in cancelling the March, 1977 lease, then refusing the several more liberal offers of Phillips to lease the property, and then in selling the property to Phillips, the Andersons, as owners of the executive interest, breached their duty owed to plaintiff. We find the trial court was in error.
The pertinent provisions of the Mineral Code, LSA-R.S. 31:1 et seq., are as follows:
§ 109. The owner of an executive interest is not obligated to grant a mineral lease, but in doing so, he must act in good faith and in the same manner as a reasonably prudent landowner or mineral servitude owner whose interest is not burdened by a nonexecutive interest.
§ 110. A mineral lease granted in violation of the standard of conduct required by Article 109 is not invalid for that reason, but the owner of a nonexecutive interest may recover any damages sustained by him by a personal action against the owner of the executive right. The action prescribes one year from the date on which the lease is filed for registry.
All of the jurisprudence in this area of the law has been concerned with oil and gas transactions as lignite development is relatively new to this state. Because of the difference in the method of extracting the minerals, it is more difficult to define the executive duties of a landowner owed to the owner of a non-executive lignite royalty *834 interest. This difference lies in the more extensive obstruction to the continued normal use by the owner of the surface of lands subject to lignite leases because of strip mining and ancillary operations.
In an attempt to clarify the extent of the duty of the executive to the non-executive owner under Article 109 of the Mineral Code, the official comments to the article adopted the explanation contained in 2 Williams and Meyers, Sec. 339.2, pages 209-210, as follows:
Where the interests of the executive and non-executive coincide, the ... improper exercise ... [of the executive right] due to carelessness, inattention, indifference, or bad faith will result in liability. Where the interest of the executive and non-executive diverge, the executive will not be bound to a standard of selfless conduct, such as that imposed on trustees or guardians. He may exercise the executive right with the same self-interest in mind as if there were no outstanding royalty or non-executive mineral interest. But the executive cannot exercise ... the executive right for the purpose of extinguishing the non-executive interest, or for the purpose of benefitting himself at the expense of the non-executive. If the conduct of the executive satisfies the ordinary, prudent landowner standard, the fact that the non-executive owner has been harmed is not actionable under this view. But if an ordinary, prudent landowner, not burdened by an outstanding non-executive interest, would have acted differently, then the executive's conduct is actionable if it causes harm. We believe this standard fairly effectuates the intent of the parties; it does not require more than can be expected of ordinary landowners and it does not permit less, especially where the `less' is due to the executive's effort to profit at the expense of the royalty or non-executive mineral owner.
When judged by the standard set forth in Article 109, that is by being in good faith and acting in the same manner as a reasonably prudent landowner whose interest is not burdened by a non-executive interest, the Andersons have not breached any duty owed to Sparks and the trial court was clearly wrong in its findings in this regard.
Plaintiff contends that the Andersons, by actually entering into a lease and then refusing to ratify either the original lease or to execute another lease containing more favorable terms, have activated the damage provisions of Article 110 and that this action was timely as it was commenced within one year of the defendants' refusal to execute the more favorable lease. Plaintiff essentially argues that the Andersons breached their duty imposed under Article 109 and that their conduct bordered on deception and material misrepresentation of fact by acting in concert with Phillips Coal Company to "freeze out" plaintiff's rights to royalties.
The only misrepresentation or deception which could be attributed to the Andersons was their failure to inform Sparks in March of 1977, when the compromise was effected between these parties, that a lease had been signed with Phillips.
Woster Anderson testified he did not so inform Sparks because he had a definite understanding with Phillip's leasing agent, Arthur Renaud, that the lease was voided.
When the lease was recorded by Phillips without the permission of the Andersons, and after the bank draft had been returned to Phillips by the Andersons' attorney, Sparks was made aware that the Andersons were taking steps to have the lease declared null as he was made a party to the suit. There is no evidence to show that he protested this action by the Andersons in any fashion and he did not file any adverse pleading to prevent the judgment cancelling the lease. Furthermore, pursuant to Article 110, it would appear that any rights that Sparks may have had for damages as a result of the execution of the March, 1977 lease would have prescribed.
There is no evidence to show any collusion between the Andersons and Phillips with the objective of depriving Sparks of his opportunity to receive royalty payments. To the contrary, it appears that *835 Phillips negotiated at arms length with the Andersons in an attempt to acquire either a lignite lease or purchase of the 242 acre tract which it intended to use for ancillary purposes to its lignite project. There is substantial testimony by Phillips' representatives that there was little probability of mining on the subject tract as the lignite was located at too great a depth to be profitably mined.
The evidence shows that the Andersons purchased the subject property for farming purposes as farming is their occupation. Woster Anderson testified that the reason for his decision to sell the 242 acres to Phillips was because of financial difficulty caused by three successive bad crop years.
Apparently, it is not uncommon for the developer of a lignite mining project to purchase tracts as well as to lease for lignite mining. We base this conclusion on the testimony in the record regarding the two-tier price that Phillips had authorized its agents to pay for property in the area of the subject tract. There is also evidence to show that it was not unusual for Phillips to grant agricultural leases with no rental for the first five years to landowners from whom it purchased land. Phillips did not want any income in Louisiana during the development stage so as to avoid the payment of corporate franchise taxes.
There is no testimony in the record to show that a reasonably prudent landowner, whose land was not burdened with a non-executive royalty interest, would not have rejected the offers to lease farming land for the mining of lignite. There has been no showing that the Andersons breached a duty of good faith in their refusal to grant a lignite lease. In fact, in view of the evidence showing Phillips intended to utilize the property for ancillary purposes which would not have generated lignite royalties to the landowner, it would have been to the economic detriment of the Andersons to have granted a lignite lease. A landowner does not have to act to his own economic detriment to fulfill his duty to the non-executive royalty owner provided he is in good faith. See comments following Article 109.
Although the terms of the offers to lease by Phillips may have been favorable to the plaintiff, the same may not have been beneficial to the Andersons so as to compensate them for the loss of the use of the farming property.
Further, there is no evidence that the Andersons acted in bad faith in ultimately selling the property to the Phillips Coal Company or that plaintiff was damaged by this sale. The Mineral Code imposes no restrictions on the landowner in the sale of his property. Woster Anderson testified that he had been on the verge of bankruptcy due to several bad crops. The agricultural lease granted by Phillips Coal Company in favor of the Andersons allowed them to retain use of the property for farming purposes and to pay their debts.
Finally, there is no evidence in the record to support a finding of fraud on the part of the Andersons or that they acted deceptively or materially misrepresented facts in order to "freeze out" the plaintiff from receiving royalty payments.
For these reasons, the judgment of the trial court is reversed, and judgment is now rendered rejecting the demands of plaintiff, Paul Preston Sparks, against defendants, Woster Anderson and Lela True Dupree Anderson. All costs including this appeal are assessed against plaintiff.
REVERSED AND RENDERED.